**F I L E D**
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS

IN THE UNITED STATES BANKRUPTCY COURT    APR 2 9 2019
FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

JEFFREY P. ALLSTEADT, CLERK
**INTAKE 2**

IN RE:    Syed A. Imam                )
                      Debtor    )    Case Number:  13 B 08875
                                      )
                                      )    Chapter 13
                                      )
                                      )    Judge:  DONALD R. CASSLING

## NOTICE OF MOTION

TO:

| | |
|---|---|
| Mortgage Creditor : <br> Green Tree Servicing LLC <br> PO Box 6172 <br> Rapid City, SD 57709-6172 | Green Tree Servicing Creditor's Agent: <br> McCalla Raymer Leibert Pierce, L.L.C. <br> 1 North Dearborn St., #1200 <br> Chicago, 60602 |
| Chapter 13 Trustee <br> Tom Vaughn <br> 55 E. Monroe St., Suite 3850 <br> Chicago, Illinois 60603 | Office of the U.S. Trustee, Region 11 <br> 219 S. Dearborn St.,  Room 873 <br> Chicago, IL 60604 |

PLEASE TAKE NOTICE that *Scheduled* on   May 2, 2019    at 10:00 AM_____

or soon thereafter as I may be heard, I shall appear before the Honorable Judge DONALD R. CASSLING in room 619, in the Dirksen Federal Building, 219 S. Dearborn, Chicago, IL 60604.

## PROOF OF SERVICE
## DECLARATION UNDER PENALTY OF PERJURY

I, Syed Imam, declare, under penalty of perjury, that I have personally mailed a copy of the foregoing Notice of Motion, and the attached Motion to the parties mentioned above by first class U.S. mail, postage paid, on this _____29_____ day of April 2019.

April 29, 2019
Date

_____
        Syed Imam,    Pro Se
        Assoc. American Institute of Architects
        Debtor
        701 S. Wells St. #1604
        Chicago, IL 60607

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

**F I L E D**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS

APR 2 9 2019

JEFFREY P. ALLSTEADT, CLERK
**INTAKE 2**

| | |
|---|---|
| IN RE:   Syed A. Imam | ) |
| Debtor | ) Case Number:  13 B 08875 |
| | ) Chapter 13 |
| Ditech Financial L.L.C. | ) |
| F.K.A.  Green Tree Servicing L.L.C. | ) |
| Creditor | ) |
| | ) |
| | ) Judge:  DONALD R. CASSLING |
| | ) |
| | ) |

## <u>DEBTOR'S MOTION TO DECLARE DITECH UNFIT TO HOLD MORTGAGE NOTE, ISSUE A FINAL CURE OF ALL PAYMENTS AND THE CASE DISCHARGE</u>

Now comes Syed A. Imam, Pro Se (herein referred to as "Debtor") files this Motion to dismiss claim of post-petition remaining dues and moves this Honorable Court to dismiss based on facts thereof states:

### I.    Creditor Filed Motion to Extend Time (In response to the Court Order)

1. On March 13, 2019, the Creditor, Ditech, filed a motion to extend time in this Court, besides other claims, claiming Debtor is not associated with an effective representative, there was never an active loan modification in place, Creditor needs  an additional time to provide Debtor's past payment history, review account ledger, and review the Debtor's mortgage note.

### II.    Background

2. Debtor resides and has been maintaining a primary residency at the property since 2003 (15 years).  Debtor is exemplarily in meeting his payment obligations to the Court appointed

Trustee and has been fulfilling his obligation to pay the Trustee for 5 years duration according to the bankruptcy plan.

3. Debtor filed a Chapter 13 petition on March 6, 2013. The case was confirmed on December 12, 2013.

4. On November 1, 2013, home loan transferred to Green Tree Servicing L.L.C. from Bank of America (BOA).

5. The Chapter 13 Trustee office had issued a Notice of Final Cure Payment on November 1, 2018, full filling the Chapter 13 Plan allowed claim payments totaling in the amount of $60,780.64 related to the mortgage for the real property located in the Cook County at 701 South Wells St. #1604, Chicago, Illinois.

6. Creditor responded on November 19, 2018, stating that the Creditor agrees that Debtor's paid in full the amount required to cure the prepetition balance and further states, Debtor is not current on all post-petition payments and provided post-petition worksheet.

7. Debtor filed a motion on December 6, 2018 in this Court to dismissed Creditor's response to Notice of Final Cure Payment due to the gross negligence in the account record keeping, and timely distribution of information related to the Debtor's mortgage account. The Debtor provided in the motion a path to resolve the account for the Creditor to act upon and provide a workable remedy. The Court appearance date was set for December 20, 2018.

8. On December 20, 2018, the Court ordered Creditor's response due in connection with Debtor's Motion to Dismiss Creditor's Response to Notice of Final Cure Payment on or before February 7, 2019 with the status set for February 14, 2019.

9. On February 7, 2018, the Creditor filed a Motion to Extend Time for additional 14 days.

10. Upon Court appearance by both parties and the agreement on February 14, 2019, this Honorable Court Granted Creditor's Motion to Extend Time generously until March 28, 2019 [49 days] to Respond to Debtor's Motion to Dismiss Creditor's Response to Notice of Final Cure Payment and status hearing set for April 4, 2019. [First Extension to response].

11. On March 11, 2019, the Creditor issued briskly an offer to Debtor "Trial Loan Modification" in Debtor's absentia with aggressive unattainable deadlines and unrealistic proposal.

12. On March 13, 2019, the Creditor filed a Motion to Extend Time for additional 32 days to file the anticipated Response.

13. This Honorable Court Granted Creditor's Motion to Extend Time further generously until April 30, 2019 to Respond to Debtor's Motion to Dismiss Creditor's Response to Notice of Final Cure Payment and the status hearing set for May 2, 2019. [Second Extension to response].

### III.    Claim One: Breach of Contract in Follow Through the Approved Loan Modification Terms

14. Debtor had tried multiple times to get Home Affordable Modification Program ("HAMP") from the current and previous Creditors and the note holders. The Creditor has failed and caused breach of Contract to extend duly approved Modified Loan as indicated in the Loan Modification Clarity Commitment on October 5, 2011 as per the HAMP program guidelines. The payment structure should have re-structured per the modified loan plan with the reduced interest rate 2.5% for 5 years than to 3.5% for 6 years than to 4.0% for the remaining of the term as indicated in the Home Affordable Modification (HAMP) Agreement, the Creditor failed to perform duty of care and breach of the agreement, "The borrower's lack of bargaining power coupled with conflicts of interest that exist in the

modern loan servicing industry provide a moral imperative that those with the controlling hand be required to exercise reasonable care in their dealings with borrowers seeking a loan modification." <u>Alvarez v. BAC Home Loans Serv., L.P.,</u> Cal. Ct. App. 1st Dist. (2014). After the successful qualified trial period, an approved letter and the executed agreement, the Creditor is obligated to process modification according to the terms of the Loan modification. "There was an enforceable contract that bound the servicer,….. to offer permanent modifications." <u>Phillip R. Corvello, Plaintiff–Appellant, v. Wells Fargo Bank,</u> NA, DBA., U.S. App. 9th (2013).

15. BOA states on the loan transfer notice to Debtor, transfer date on November 1, 2013 to Green Tree L.L.C. and "If you are considered for a loan modification …. your new servicer Green Tree Servicing L.L.C. is aware of your current status and will have your documents." The BOA had modified the loan.

16. Creditor had knowledge or reason to believe that a Debtor had an approved Loan Modification with the prior servicer of the loan, but continued to seek to collect payments from the Debtor under the original, unmodified mortgage loan terms.
    **Exhibit 1.**

17. Creditor's representations and act as set forth in paragraph 12 are false or misleading and constitute a deceptive act or practice in violation of the CFPA, 12 U.S.C. §§ 5531(a) and 5536(a)(1)(B).

## IV.   Claim Two: Negligence in Providing Timely Account Status and Furnishing Information Known to Be Inaccurate

18. Creditor showed negligence in maintaining and due care in record keeping of the mortgage. In truth and in fact, in several instances the material representations were false or were not substantiated at the time the representations were made, including but not limited to representations made where:

   a.   Creditor had many years to response or work with Debtor, if the account had some irregularities.

   b.   Creditor never claimed during the course of bankruptcy, that Debtor account is not current and no such notice was sent out to the Court nor to Debtor.

19. Debtor communication was limited and restricted to only Creditor's bankruptcy department; Debtor was not able to discuss the account details or status with Creditor's customer service due to auto-transfer of phone calls to bankruptcy department who were untrained to assist Debtor mortgage related situation.

20. Debtor was informed during the course of bankruptcy that no payment is due while in the bankruptcy as well as indicated on the monthly Creditor's mortgage previous statements and regardless, Debtor believes, he has made payments to fulfill his obligations in part by payments, and reduction of interest rates, truly due after the modification of the loan in 2011.

21. The Creditor to this date has failed to come up with proper debtor account records. The newly presented information by the Creditor continue to discount Debtor's true and detail accounting standing.  This Court and Debtor have been asking to produce documents and proper accounting of the mortgage account, but the creditor repeatedly failed to produce

such information. Some of them are very basic information such as legible documents, correct balance and calculations, etc., the information typically readily available from a financial institution.

22. The mortgage records are presumably are kept in electronic data format and which can be queried and reported in a timely fashion. The records are in the financial industry standardly kept on a server and the data are normally backed up periodically.

23. Since the Notice of Cure Payment by the Trustee in November 2018, Debtor has continued to made payments in access of $ 11,500.00 to Creditor. **Exhibit 2.**

24. During the course of mortgage payments, Debtor has been paying additionally, monthly Home Association dues, since September 2003 (Over 15 years) which is currently at $779.60. Approximately total amount paid for the same is $118,000.00. **Exhibit 3.**

## V.   Claim Three: Predatory, Unpractical New Modification Trial Period Plan and Offer

25. A loan modification letter dated February 28, 2019 from Creditor was sent by Creditor's attorney on March 11, 2019 to Debtor, informing of "trail loan modification" with unchanged high interest fixed rate of 7.25% for "40 years" on unpaid principle balance of $224,659.36 with monthly principal and interest payment of $1,437.08 **Exhibit 4.**

26. Debtor was out of town when the mortgage offer came in via U.S. mail with signoff date on March 15, 2019. Debtor came back on March 21. This schedule of Debtor was mentioned in the Court appearance.

27. Debtor has mortgage for over 15 years already and by adding this new term, the total term of the loan would become unacceptable 55 years, for an apartment.

28. The original loan in 2003 was for 227,920 (15 years ago). Hence the difference or the loan principal balance paydown is only $3,260.64 during last 15 years. Debtor has paid close to $2000 each month mortgage payments.

29. The total payment for the new 40 years modification terms would be total of $689,798.40. Debtor already payed, thus far (15 years) in interest alone over $200,000.00, since the inception of the loan. The property is valued around $300,000.00. The new loan modification terms are outrageously spurious, grossly profit by design Creditor while taking unfair advantage of Debtor's financial situation.

## VI. Verification of Debtor's Mortgage Account

30. Debtor has hired a CPA firm to do an independent audit of mortgage payments from the inception of the mortgage in the year 2003 through current year 2019 and discovered discrepancies or overcharged payments in the Creditor's post-petition payment worksheet and other findings as follows:

   a. Current Principal Balance: $179,759.00

   b. Remainder term: Until October, 2033.

   c. Debtor made overpayment of interest charges in the amount of $36,732.30, since the loan was modification in 2011. **Exhibit 5.**

## VII.   Claim Four: Stalling Debtor's Bankruptcy Discharge Causing Financial and Credit Loss

31.   The Trustee office had provided a Notice of Final Cure Payment almost 6 months ago on November 1, 2018. Creditor never notified that the account is behind during the course of Bankruptcy as per Bankruptcy Code §1322(b)(5). Creditor had plenty of time to rectify the account issue and take action, if the account had some irregularities, a work-out a plan with Debtor during past several years. Additionally, this Court has given enough time to come up with a suitable response, accurate reporting of the account in a legible format. "Neither could they have anticipated that PNC would take no action in response to the payment default until the very end of the five-year term of the plan. Had PNC [582 B.R. 23] filed a stay relief motion as to the 2nd mortgage earlier in the case, it is likely that the Debtors would have negotiated a repayment agreement just as they did with respect to an earlier default on the 1st mortgage." In Re: Gibson, 582 B.R. 15 (Bankr. C.D. Ill. 2018)

32.   Creditor is likely to continue to injure Debtor, reap unjust enrichment, and harm the Debtor's financial future by not providing credit where it is due.

33.   Creditor has been continued to installed Debtor's due discharge of bankruptcy, by not presenting the true accounting of the Debtor's, since last year and in the process, affecting negatively Debtor's future financial opportunities and consequently delaying Debtor's process of credit repair, investments, retirement savings, security and post-bankruptcy financial well-being. The home investment is considered for most Americans, a major life time financial investment. Chapter 13 bankruptcy is a framework, designed to fix the financial situation of people and entities who are in financial distress and the plan can lead to a better financial well-being, after a discharge. Due to the negligence, inaction and

misrepresentation by Creditor, the Debtor estimated loss of financial opportunity due to

adverse credit, hampering credit reestablishing efforts and future credit itself, and not having

the property payments cured $ 1,522,830.00. **Exhibit 6.**


### VIII.   Claim Five: Mismanaged and Misrepresent the Debtor's Account

34. Creditor has grossly mismanaged the Debtor's mortgage account:

   a)  Incorrect 60613 property zip code on Creditor's website dashboard page.

   b)  Incorrect Borrower's name.

   c)  Debtor's payment history is not available on Creditor's website payment history page.

   d)  Interest rate is inconsistent with the modified loan terms Creditor's website dashboard
       page.

   e)  Debtor has not been receiving monthly mortgage statements.

   f)  Statement has been sent out to an unknown Iowa Address, notified by Creditor's
       representative, even after the Debtors' objection exist after December 2018, making it
       impossible to know amount due and other vital account information to Debtor. **Exhibit 7.**

35. Creditor has not kept a separate accounting ledger of the Trustee and Debtor's payment on

the monthly statements. The payments amount is comingled on the statements.

36. Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. 1692e §807(2)(A), prohibits false

representation of the character, amount, or legal status of any debt.


### IX.   Claim Five: Unfair Advantage

Departure of Debtor's ex-wife and more recently, Debtor's attorney leave due to law office

closure, shouldn't be construed as a limiting factor and not give rise Creditor to act unjust

and perform unethical business practices as set forth in sections V, VII, & VIII. Debtor has only taken one course in a law school and is not a lawyer, but that should not be a limiting factor to pursue Pro Se route for which a method is in place, including Help-Desk office in the Court which can be indeed an affective representation method and course of action. Past Creditor loan related actions and inaction left Debtor exposed to exploitation and jeopardized Debtor investment real estate by the Creditor.

## X. Violations and Not Fit to Service Mortgage

37. Record shows Creditor had accrued several fines, judgments, recent Chapter 11 bankruptcies twice in 14 months, several suits and complaints. The Creditor has agreed to pay $48 million to consumers and a $15 million civil penalty to settle federal allegations of illegal home loan servicing and debt collection practices. **Exhibit 8.**

38. Creditor cannot be trusted and unfit as mortgagee due the current financial standing and restructuring of Creditor's organization.

39. Creditor's website (https://www.ditech.com/) main page indicates, "If you received a letter that the servicing of your mortgage loan has been transferred to LoanCare, please call....", Debtor has not received any such notice of assignment or communication, violation of The Real Estate Settlement Procedures Act ("RESPA") 12 U.S.C. § 2605 (a)(b)(c).

40. Debtor has spent more than six months, waiting for a valid response from Creditor in regards to the loan status and corrections of the loan record, caused the breach of 12 U.S.C. §2605 (e) which requires a written response acknowledging receipt of the correspondence within 5 days and no later than 30 days with 15 days extension make appropriate corrections, conduct investigation, and written explanation or clarification.

41. Due to the grossly mismanagement of the account and restructuring of the Creditors'

organization, there is a possibility that Debtor's mortgage account may not be settled or

transferred without a closure, if not settled now in this Court.

## XI.   PRAYER FOR RELIEF

42. WHEREFORE, Debtor Syed Imam prays that this Honorable Court move to dismiss

Creditor's claim of unpaid post-petition account, Creditor adjust the remainder of loan terms

par with the October 1, 2011 loan modification, and reflect the Final Cure Payment of the

Chapter 13 case complete and Court's own equitable powers, request that the Court:

A. Award such relief as the Court finds necessary to redress injury to Debtor

resulting from Ditech's violations of the CFPA, the RESPA and the FDCPA;

B. Award Debtor money penalties for Ditech's violations of the CFPA, the

FDCPA, and RESPA;

C. Award Debtor the reasonable costs of during this Case, Motion and future loss

of credit, opportunities, and incomes.

D. Award additional relief as the Court may determine to be just and proper.


Most Respectfully Submitted,


Syed A. Imam, Pro Se, Debtor
AHC, CDT,
LEED AP, U.S. Green Building Council
Assoc. American Institute Architects
Project Management Professional (PMP)
701 S. Wells St.
#1604
Chicago, IL 60607

**Property Address**
MEHMOODA M IMAM
701 SOUTH WELLS STREET #1604
CHICAGO, IL 60607

**Bank of America** ⬥ **Home Loans**

Notice Date: 10/05/201
Loan No: 3811350

## Loan Modification
## CLARITY COMMITMENT ®

Thank you for working with Bank of America, N.A. on your current mortgage needs and for making your trial period mortgage payments.  Th
summary is intended to be a clear and simple description of the final loan modification that we are pleased to offer you.  The loan modificatio
is intended to help you with your current needs, and to put you in a better position to meet your loan obligation.  Once you sign and return the
enclosed Modification Agreement, you will have agreed to the new permanent loan modification.  Please thoroughly review all the materials i
the enclosed package to ensure you understand the details of this new agreement.

### Summary of Your Modified Loan

Your new loan balance is **$230,869.84**. Past due interest in the amount of **$18,017.31**, and taxes and insurance in the amount of **$3,450.40**
totaling **$21,467.71** have been added to your principal balance to calculate this new loan balance. Unpaid late fees are not included in this
amount and will be waived when your loan modification is finalized.

The current interest rate of 7.250% is changing to 2.500% for the first 5 years of your modified loan. This rate will increase as shown in the
section below.

Your final payment date, which is your existing maturity date, is 10/01/2033.

### Your New Mortgage Payments

Your new total modified monthly mortgage payments of **$1,530.26** are made up of principal and interest of **$1,137.81** and an initial escrow
amount of **$392.45**.  Escrow payments are collected for payment of items such as property taxes and insurance and may change. We will
notify you of any adjustments to the total monthly payment.

Your total monthly payments will be due on the 1st of the month starting the 1st day of November, 2011.

Your interest rate will adjust to slowly bring your rate to 4.000% and your total monthly payments to **$1,667.86**, as shown in the schedule
below.  The amount of these payments will change if your escrow payment amount changes.

- Years 1 – 5, beginning November 1, 2011,  the interest rate will be 2.500% with a total monthly payment of **$1,530.26**
- Year 6, beginning November 1, 2016, the interest rate will be 3.500% with a total monthly payment of **$1,622.61**
- Years 7– 22, beginning November 1, 2017, the interest rate will be 4.000% with a total monthly payment of **$1,667.86**

**If you have questions regarding the Modification Agreement or the steps you must take to complete this process, contact us at
1.800.669.6650 to speak with one of our home retention associates.**

EX·1

**Summary of your Modification**

**NEW PRINCIPAL BALANCE.** Any past due amounts as of the end of the trial period, including unpaid interest, real estate taxes, insurance premiums, and certain assessments paid on your behalf to a third party, will be added to your mortgage loan balance. In addition, your mortgage insurance premium may increase as a result of the higher mortgage loan balance. **If you fulfill the terms of the trial period including, but not limited to, making any remaining trial period payments, we will waive ALL late charges that have accrued and remain unpaid at the end of the trial period.**

**INTEREST RATE.** The interest rate on your modified loan will be adjusted as noted in the attached Modification Agreement in Section 3.C.

**ESCROW ACCOUNT.** The terms of your Modification Agreement require the servicer to set aside a portion of your new monthly payment in an escrow account for payment of your property taxes, insurance premiums and other required fees. Any prior waiver of escrows by your lender is no longer in effect. Bank of America, N.A. will draw on this account to pay your real estate taxes and insurance premiums as they come due. Please note that your escrow payment amount will adjust if your taxes, insurance premiums and/or assessment amounts change, so the amount of your monthly payment that Bank of America, N.A. must place in escrow will also adjust as permitted by law. This means that your monthly payment may change. Your initial monthly escrow payment will be $392.45. This amount is included in the loan payment noted in Section 3.C. of the enclosed Modification Agreement; you do not need to remit this amount separately.

**ESCROW SHORTAGE.** Due to the timing of your tax and insurance payments, we have determined that there is a shortage of funds in your escrow account in the amount of $936.37. You may pay this amount over a 5-year (60 month) period. This monthly payment has already been included in the monthly escrow payment stated above. **If you wish to pay the total shortage now in a lump sum, please contact us. Paying this amount now in a lump sum will reduce your new monthly mortgage payment.** Bank of America, N.A. may include alternative provisions to deal with an escrow shortage in accordance with applicable law.

**PAYMENT SCHEDULE.** The enclosed Modification Agreement includes a payment schedule in Section 3.C. showing your payment plan for the life of your modified loan after the trial period.

**FEES.** There are no fees or other charges for this modification.

**REPRESENTATIONS.** Please read the enclosed Modification Agreement carefully and make sure that you understand it and that the statements set forth in the "My Representations" section are true and accurate. If you have any questions, please contact us at 1.800.669.6650.



**Home Affordable Modification Agreement (Servicer Copy 1)**

Investor Loan #        0406169284527860607

**After Recording Return To:**
Bank of America, N.A.
Attn: Home Retention Division
100 Beecham Dr., Ste 104 HRM
Pittsburgh, PA 15205

This document was prepared by Bank of America, N.A.

_____[Space Above This Line For Recording Data]_____

# HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower ("I")[1]: MEHMOODA M IMAM
Original Lender/Beneficiary Lender or Servicer ("Lender"): Bank of America, N.A.
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note
("Note"): September 16, 2003
Loan Number: 04063811350560607
Property Address *(See Exhibit A for Legal Description if applicable)*
("Property"): 701 SOUTH WELLS STREET ███, CHICAGO, IL 60607
See Exhibit B for assignments of record if applicable

---

1. If more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

**MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT** –Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
  3/09  (rev. 8/09) *(page 1 of 11 pages)*                                    **Form 3157**



HMP-46004                                                                     8116  08/09

MERS: '100015700029436561
"MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS.

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.        **My Representations and Covenants**.  I certify, represent to Lender, covenant and agree:

     A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

     B.  One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;

     C.  There has been no impermissible change in the ownership of the Property since I signed the Loan Documents.  A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage.

     D.  I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));

     E.  Under penalty of perjury, all documents and information I have provided to

**MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT** –Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                                                                      **Form 3157**
   3/09  (rev. 8/09) *(page 2 of 11 pages)*



HMP-46004                                                                                                                  8116 08/09

Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

F.  If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

G.  I have made or will make all payments required under a trial period plan.

2.  **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A.  If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

B.  I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.  **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on November 01, 2011 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on November 01, 2011.

A.  The Maturity Date will be: October 1, 2033. ✓

B.  The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $230,869.84 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts

**MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT** –Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                                                                                    **Form 3157**
3/09  (rev. 8/09) *(page 3 of 11 pages)*



HMP-46004                                                                                                                      8116  08/09

EX.1
(cont'd)

accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C.  Interest at the rate of 2.500% will begin to accrue on the New Principal Balance as of October 01, 2011 and the first new monthly payment on the New Principal Balance will be due on November 01, 2011. My payment schedule for the modified loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Prin & Int Payment Amount | Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 2.500% | October 01, 2011 | $1,137.81 | $392.45 May adjust periodically | $1,530.26 May adjust periodically | November 01, 2011 | 60 |
| 6 | 3.500% | October 01, 2016 | $1,230.16 | May adjust periodically | May adjust periodically | November 01, 2016 | 12 |
| 7-22 | 4.000% | October 01, 2017 | $1,275.41 | May adjust periodically | May adjust periodically | November 01, 2017 | 192 |



* The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

D.  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.  If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

**MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT** –Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                                      **Form 3157**
3/09  (rev. 8/09) (page 4 of 11 pages)



HMP-46004                                                                                   8116  08/09

4.    **Additional Agreements**.  I agree to the following:

A.   That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.   That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C.   To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.   That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E.   That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.   That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.   That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage.  Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer.  If Lender exercises this option, Lender shall give me notice of acceleration.  The notice shall provide a period of not less

**MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT** –Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                                              **Form 3157**
3/09   (rev. 8/09) *(page 5 of 11 pages)*



HMP-46004                                                                                          8116  08/09

than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void. I also agree to allow Lender to attach an Exhibit A to this loan modification which will include a Legal Description, recording information of the original security instrument, and any other relevant information required by a County Clerk's Office to allow for recording if and when recording becomes necessary for Lender.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

**MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT** –Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                                                                              **Form 3157**
3/09  (rev. 8/09) *(page 6 of 11 pages)*



HMP-46004                                                                                                                    8116 08/09

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity.   In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O. If my Loan Documents govern a home equity loan or line of credit, then I agree that as of the Modification Effective Date, I am terminating my right to borrow new funds under my home equity loan or line of credit. This means that I cannot obtain additional advances, and must make payments according to this Agreement. (Lender may have previously terminated or suspended my right to obtain additional advances under my home equity loan or line of credit, and if so, I confirm and acknowledge that no additional advances may be obtained.)

**MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT** –Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** **Form 3157**
3/09  (rev. 8/09) *(page 7 of 11 pages)*



HMP-46004                                                                                                    8116 08/09

P. (BORROWERS PROTECTION PLAN) If I have a Loan with Borrowers Protection Plan® ("BPP") under my Loan Documents, then I understand and agree that, unless I notify Lender of my request to cancel BPP or my BPP has already been cancelled or terminated in accordance with its terms, my BPP will remain on my Loan, as modified in accordance with this Agreement, and will continue to be governed by the terms of my Borrowers Protection Plan Addendum, which is the contract containing the terms and conditions of BPP that I received at closing of my original Loan.

I understand that I may cancel BPP at any time by calling 1-866-554-2676. If I notify the Lender of my request to cancel BPP within sixty (60) days after the Modification Effective Date, I will receive a refund of any BPP fees I pay with respect to any period after the Modification Effective Date. I further understand that BPP on my Loan may have already been cancelled or terminated by its terms, such as if any monthly fee for BPP has remained unpaid 90 days after its due date.

For purposes of my modified Loan, the "Monthly Payment" under the Borrowers Protection Plan Addendum will be the monthly payment of principal and/or interest as modified under this Agreement. With the exception of BPP benefits based on the outstanding balance of my Loan (if any), benefits under the BPP on my modified Loan will be calculated based on this new Monthly Payment amount, subject to the terms of the Borrowers Protection Plan Addendum.

For purposes of my modified Loan, the monthly fee for BPP, which is the monthly amount charged to me for BPP, will be recalculated based on the percentage set forth in my Borrowers Protection Plan Addendum (or Borrowers Protection Plan Confirmation Letter, as applicable). I understand that the monthly fee for BPP, as a percentage of my monthly payment of principal and/or interest as modified under this Agreement, may be higher if the monthly payment under my modified Loan is or becomes higher than the monthly payment that was due on my Loan prior to modification under this Agreement. The monthly fee for BPP will be payable at the same time and place as payments of principal and/or interest under my modified Loan. The "Protection Date" under the Borrowers Protection Plan Addendum, which is the date upon which my BPP became effective, and the "Expiration Date" under the Borrowers Protection Plan Addendum, which is the date upon which my BPP will automatically expire, will not be changed by this Agreement. I will refer to my Borrowers Protection Plan Addendum for complete terms and conditions of my BPP.

**MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** Form 3157
3/09 (rev. 8/09) *(page 8 of 11 pages)*



HMP-46004

8116 08/09



EX.
2

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE:  CASE NO. 13 B 08875
CHAPTER 13

Syed A. Imam

JUDGE DONALD R CASSLING

DEBTOR  **NOTICE OF FINAL CURE PAYMENT**

Pursuant to Federal Rule of Bankruptcy Procedure 3002.1(f), the Chapter 13 Trustee, TOM VAUGHN
files this Notice of Final Cure Payment. The amount required to cure the default in the claim listed
below has been paid in full.

**Name of Creditor:** <u>GREEN TREE SERVICING LLC</u>

**Final Cure Amount**

| Court Claim # | Claim ID | Account Number | Claim Asserted | Claim Allowed | Amount Paid |
|---|---|---|---|---|---|
| 7 | 65 | XXXXXX4707 | $60,330.64 | $60,780.64 | $60,780.64 |

| Total Amount Paid by Trustee | | | | | $60,780.64 |
|---|---|---|---|---|---|

**Monthly Ongoing Mortgage Payment**

Mortgage is Paid:

__  Through the Chapter 13 Conduit  **X**  Direct by the Debtor

Within 21 days of the service of the Notice of Final Cure Payment, the creditor MUST file and serve a
Statement as a supplement to the holder's proof of claim on the Debtor, Debtor's Counsel and the
Chapter 13 Trustee, pursuant to Fed.R.Bank.P.3002.1(g), indicating 1) whether it agrees that the Debtor
has paid in full the amount required to cure the default on the claim; and 2) whether the Debtor is
otherwise current on all payments consistent with 11 U.S.C. § 1322(b)(5).

The statement shall itemize the required cure or post-petition amounts, if any, that the holder contends
remain unpaid as of the date of the statement. The statement shall be filed as a supplement to the
holder's proof of claim and is not subject to Rule 3001(f). Failure to notify may result in sanctions.



**WELLS
STREET
TOWER**
Overlooking the River
and Printers Row



EX
3

701 S. Wells Street, Chicago, IL 60607 | Phone 312.913.9000 | Fax 312.913.9066 |
J.Steele@DKCondo.com

December 5, 2018

RE:  Unit ⬛ and ⬛ Assessment Dues

To whom it may concern,

This letter is confirmation that homeowner, Sid Imam, homeowner of unit ⬛ at Wells
Street Tower Condominium Association located at 701 S. Wells Street, Chicago, IL 60607
has done the following:

- Moved in the building in September-2003 and has been paying Association Dues.
- As of December 5th, Mr. Imam is current with his association dues (see attached
  ledger)
- Mr. Imam's current monthly fees are $694.95 (unit) and $84.65 (garage space)

If you should require additional information, please contact my office at 312-913-9000 or
via email at wellsstreettowermgr@draperandkramer.com.

Respectfully submitted,

Jermeise Steele, CAM

Wells Street Tower Condominium Association
Draper and Kramer, Managing Agent

Cc:  Owner file

Attachment:  Owner Ledger

If I have experienced a qualifying event that is eligible for benefits under BPP, I should contact Bank of America immediately by calling 1-866-317-5116.

Q. (OPTIONAL PRODUCTS PURCHASED AFTER CLOSING) I understand and agree that any optional product(s) I may have purchased after the closing of my Loan, the cost for which I agreed to have added to my Total Monthly Payment: (a) will remain in force so long as I add the amount due and owing to my Total Monthly Payment each month; and (b) will continue to be governed by the terms of the documents the provider of the optional product delivered to me ("Governing Documents"), unless (i) I notify the provider of the optional product of my request to cancel; or (ii) I fail to pay any and all amounts payable when due, at which time the optional product may terminate as provided under the terms of the Governing Documents. I understand that if I have questions regarding any optional product(s) I may have purchased, I should contact Bank of America by calling 800-641-5298.

**MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT** –Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** **Form 3157**
**3/09   (rev. 8/09)** *(page 9 of 11 pages)*

HMP-46004                                                                                    8116  08/09

